Argued and submitted May 22, affirmed November 18, 1987

FIREMAN'S FUND INSURANCE CO.,
*Appellant,*

*v.*

COZAD CONSTRUCTION COMPANY,
*Respondent.*

(CC-83-499; CA A39528)

745 P2d 432

Thomas M. Christ, Portland, argued the cause for appellant. With him on the brief was Mitchell, Lang & Smith, Portland.

Richard M. Botteri, Portland, argued the cause for respondent. With him on the brief was Weiss, DesCamp & Botteri, a Professional Corporation, Portland.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

The United States Forest Service let a contract to Vinson-Kirby, a partnership, to build roads in the Willamette National Forest. Plaintiff, Fireman's Fund, issued bonds to secure Vinson-Kirby's performance of the contract, including payment of subcontractors. The individual partners and the partnership agreed to indemnify plaintiff for any losses sustained under the bonds.

Work under the contract began in late 1978. On December 31, 1980, the partners reorganized their business and incorporated Vinson & Kirby Enterprises, Inc. (V & K). The corporation assumed all of the partnership's assets and liabilities. On April 20, 1982, V & K and defendant entered into a written contract concerning the road project and other V & K projects. V & K agreed to prepare all payroll and job-related expenses, perform all physical work on the projects, maintain and operate all equipment and procure insurance for that equipment; defendant agreed to supply equipment and to provide funds for the three projects from a joint checking account with V & K. In addition, they agreed:

"The following shall become an integral part of this agreement[:]

"* * * * *

"2. The profits and[/]or losses of the * * * projects[1] are to be shared equally by and between [defendant] and [V & K]."

That provision was added to the agreement at defendant's insistence. Defendant expressly refused to become a principal on the bonds.

Kirby died on September 13, 1982, after the project had been completed. Subcontractors filed claims against plaintiff. Plaintiff either paid out or tendered into court its $200,000 contractual obligation. Plaintiff then sued the former Vinson-Kirby partnership for indemnity and obtained a judgment. V & K, the successor to Vinson-Kirby's rights and liabilities, assigned to plaintiff any rights that it had against defendant.

---

[1] There were two other road building projects, but they are not involved in this case.

Plaintiff then began this action. In the complaint, the first claim for relief, called "subrogation," set out the substance of the facts already stated and alleged:

## "VII.

"On or about April 20, 1982, V & K * * * and [defendant] * * * entered into a written contractual agreement which provided that defendant * * * and V & K * * * were to share equally in the profits and/or losses incurred in the performance of the * * * Project. * * * To date, said losses total $200,000.00, all of which has [sic] been paid by plaintiff, as surety, on behalf of Vinson-Kirby [the partnership].

## "VIII.

"The aforementioned payment and performance bonds were incorporated as part of the * * * agreement * * *. V & K * * * has assigned all its rights against [defendant] to plaintiff, and by virtue of this assignment, defendant is liable to plaintiff for $100,000.00, which sum represents an equal share of the losses sustained by V & K * * * on such projects [sic]."

The prayer sought $100,000, plus costs and attorneys fees.

The action was tried to the court, sitting without a jury. The court found in favor of defendant and entered judgment accordingly. With respect to the so-called subrogation claim, the court ruled that

"[p]laintiff's first contention is that defendant * * * is liable * * * on a subrogation theory for losses paid on the * * * Project. I find to the contrary. One must look to the obligations of V & K * * * un[der] the 'Equipment Rental agreement.' * * * Those duties were generally limited to providing equipment, funding and bookkeeping services. No where [sic] in the agreement is there an express intention on the part of [defendant] to become liable for previous losses or to be a co-indemnitor of plaintiff. Indeed * * * the evidence of the circumstances under which the equipment rental agreement was made indicates that there was never any intention of [defendant] to be liable for the losses claimed by the plaintiff."

At this point, it is necessary to take careful note of some peculiarities. The parties agree that V & K undertook the former partnership's obligations under the Forest Service contract. They seem also to agree that the arrangement between V & K and defendant was a joint venture, which is a species of partnership. They also agree that the joint venture

document is the equipment rental agreement referred to in the ruling by the trial court quoted above. None of that presents any particular problem until the complaint quoted above is examined carefully. No one disputes that plaintiff paid its $200,000 obligation on the performance bond. No one disputes that that was, in insurance terms, a "loss" on the bond. No one disputes that, under the terms of the bond, Vinson-Kirby was obligated to indemnify plaintiff for any loss *on the bond.* No one disputes that V & K assumed that obligation when it succeeded to the rights and obligations of the former partnership.

 Now things begin to go awry. One would think that plaintiff, if it were pursuing a right of subrogation in any sense heretofore understood, would be asserting the rights of the subcontractors which it had paid and that, if it chose to do that, it need not assert a subrogation claim, because it already had a contractual right to be indemnified by Vinson-Kirby, an obligation assumed by V & K. Moreover, if it is asserting a right of subrogation (or of indemnification), it ought to be claiming the right to recover $200,000, not $100,000. Instead, it appears to be asserting the right of one partner, V & K, to have some sort of "loss" shared equally by the other partner, defendant. It seems very clear that the sort of "loss" that plaintiff suffered by having to pay on its bond is not the sort of "loss" which the partners under the equipment rental agreement agreed to share.[2] Even assuming that plaintiff has any understanding of what its own pleading says, the posture of the case is still very peculiar. A partner cannot sue another partner for damages arising out of the partnership business until there has been an accounting for the partnership. *Moffatt v. Harden,* 58 Or App 505, 648 P2d 1311, *rev den* 293 Or 653 (1982). No accounting was pleaded. The "losses" from the partnership between V & K and defendant have, therefore, so far as this record is concerned, never been determined.[3] Although plaintiff alleges that "losses total $200,000.00, all of which has [sic] been paid by plaintiff, as surety," that is patently legally impossible.

---

[2] Nowhere in the record is there any suggestion that what is sought to be shared here is an expense.

[3] It is agreed, apparently, that there was a loss of $300,000 on the single project involved in this case.

Having said that, we are in a situation where a lawsuit on totally fallacious, and legally impossible, grounds has been fought to a judgment based on the issues as the parties presented them. In order for us to treat seriously plaintiff's assignment of error that the trial court erred in denying its "subrogation theory of recovery" we would have to treat the theory as if it were real—but it is not. We therefore affirm on the first assignment of error.

Plaintiff's second assignment of error is that the trial court erred in finding for defendant on plaintiff's breach of contract theory of liability. The key pleading in that claim is:

"X.

"[Defendant] has breached its contractual agreement with V & K * * * by refusing to share equally in the losses sustained by V & K * * * on the * * * Project, and defendant is, therefore, liable to plaintiff in the amount of $100,000.00, which sum represents an equal share of the losses sustained * * * on the said project."

This assignment has the same fundamental defects as the other one.[4] The only way we could resolve the legal issue sought to be presented is by a route that would identify that there is no legal foundation whatsoever for the claim asserted. We decline to waste any more time doing that.

Affirmed.

---

[4] Plaintiff abandoned its third assignment of error relating to a claim on a third party beneficiary theory at oral argument.